Filed 11/17/25  P. v. O'Connell CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C101595 |
| Plaintiff and Respondent, | (Super. Ct. No. 19F871) |
| v. | |
| MICHAEL PATRICK BRIAN O'CONNELL, | |
| Defendant and Appellant. | |

In 2020, a jury found defendant Michael Patrick Brian O'Connell guilty of first degree murder (Pen. Code, § 187, subd. (a); statutory section citations that follow are to the Penal Code unless otherwise stated) and found true that he personally discharged a firearm causing great bodily injury or death during the commission of the crime (§ 12022.53, subd. (d)).  Defendant was sentenced to 25 years to life for the murder along with a consecutive term of 25 years to life for the firearm enhancement.  Defendant successfully appealed his sentence for the firearm enhancement in light of *People v. Tirado* (2022) 12 Cal.5th 688 (*Tirado*).  On remand, he urged the trial court to either

1

dismiss the enhancement or reduce it to a lesser included enhancement.  The trial court refused, leaving the original sentence in place.

Defendant again appeals, arguing the trial court erred by declining to strike or impose a lesser enhancement.  Specifically, defendant argues the court failed to give great weight to the mitigating circumstances and failed to consider whether dismissal or reduction of the enhancement would endanger public safety at the time of defendant's release.  In asking for remand for resentencing, defendant requests the proceedings be assigned to a different trial court judge.  We affirm the judgment.

FACTS AND HISTORY OF THE PROCEEDINGS

We summarize the pertinent facts of the underlying murder from our opinion in *People v. O'Connell* (March 14, 2023, C093156 [nonpub. opn.] (*O'Connell*)).

Defendant and A.M. were roommates in a house living in separate bedrooms. (*O'Connell*, *supra*, C093156.)  Defendant's mother came to visit him at the house in the afternoon of February 6, 2019.  (*Ibid.*)  After resting in his room for a while, defendant came into the living room with a 12-gauge pump-action shotgun slung around his shoulder.  (*Ibid.*)

Armed with the shotgun, defendant went to the victim's bedroom; he tried to open the door but it was locked.  (*O'Connell*, *supra*, C093156.)  Defendant banged on the door and yelled to A.M. that he had to "get out."  (*Ibid.*)  A.M. yelled something back.  (*Ibid.*) Defendant then went to the living room and waited, standing, facing the hallway with his back near the wall.  (*Ibid.*)

A few minutes later, A.M. came out of his bedroom with boxers on.  (*O'Connell*, *supra*, C093156.)  He paused briefly at his bedroom door and was walking toward defendant with his fists balled up when defendant shot him.  (*Ibid.*)  A.M. was not armed nor was he within arm's reach of defendant when he was shot.  (*Ibid.*)

2

Defendant unloaded the shotgun and followed his mother outside where he spoke with police officers. (*O'Connell*, *supra*, C093156.) Defendant was distraught and crying but cooperative. (*Ibid.*)

Video surveillance from the home showed defendant carrying the shotgun in a "low-ready" position around the house at different times of the day and night in the months leading up to the shooting, sometimes when others were present. (*O'Connell*, *supra*, C093156.) The shooting itself was not caught on camera, but footage from the early morning hours from the day of the shooting showed normal interactions between defendant and A.M. (*Ibid.*) Defendant can also be seen standing in the kitchen at 5:02 p.m. without the shotgun but he reenters the frame with the shotgun two minutes later. (*Ibid.*) At 5:08 p.m., defendant's mother is seen leaving the house followed a few seconds later by defendant. (*Ibid.*)

A jury found defendant guilty of first degree murder (§ 187, subd. (a)) and found true the allegation that defendant personally discharged a firearm causing great bodily injury or death (§ 12022.53, subd. (d)).

At the sentencing hearing, defendant requested the trial court strike the firearm enhancement under section 12022.53, subdivision (h) in the interest of justice. The trial court declined to do so for several reasons. The court focused on defendant's history of prior crimes including misdemeanor driving under the influence with blood-alcohol of 0.15 percent or greater or refusal to take breath or urine test in 2006 (Veh. Code, §§ 23152, subd. (b), 23578); misdemeanor vandalism in 2007 (§ 594); misdemeanor possession of cannabis in 2007 (Health & Saf. Code, § 11357, subd. (b)); two counts of misdemeanor battery in 2007 (§ 242); two violations of probation in 2007; and another misdemeanor driving under the influence in 2018 (Veh. Code, § 23152, subd. (b)).

The trial court also observed that defendant was on probation at the time he committed the murder and highlighted the nature of the crime insofar as it was an unprovoked killing inside the victim's home. The court also noted its concern for public

3

safety: "And public safety is a huge part of sentencing. Sometimes, when a crime is so egregious, and a defendant has been given so many opportunities to succeed, the best the Courts can do is take the individual off the street for the longest period of time possible in order to assure public safety."

The trial court sentenced defendant to 25 years to life for the murder and a consecutive term of 25 years to life for the firearm enhancement.

Defendant appealed and this court remanded the matter to allow the trial court to exercise its discretion to dismiss the firearm enhancement and impose a lesser, uncharged enhancement under sections 1385, subdivision (c) and 12022.53, subdivision (h). (*O'Connell*, *supra*, C093156.)

On remand, defendant asked the trial court to dismiss the firearm enhancement under sections 1385 and 12022.53, subdivision (h). Counsel asked the trial court to give "great weight" to three mitigating factors: (1) the firearm enhancement would result in a sentence of over 20 years (§ 1385, subd. (c)(2)(C)); (2) the murder was connected to defendant's mental illness (§ 1385, subd. (c)(2)(D)); and (3) the facts relating to his prior victimization and childhood trauma (§ 1375, subd. (C)(2)(E)).

Defendant supported these claims with a "Resentencing Forensic Psychological Evaluation" by Dr. Don Stembridge, who interviewed defendant on the phone on March 22 and 29, 2024, to discuss defendant's personal and mental health history as well as the underlying crime.

The People asked the trial court to not strike the enhancement, arguing that defendant was not "in the throes of some sort of psychological break or some sort of traumatic event" when he murdered his roommate, but rather, it was planned and premeditated. The People also provided documentation from prison showing that defendant repeatedly failed to attend his substance use disorder treatment program in 2022, and he refused to work at his assigned prison job in 2021 and 2022.

4

The trial court declined to exercise its discretion to dismiss or reduce the firearm enhancement. In reaching its decision, the court reviewed *Tirado* and *People v. McDavid* (2024) 15 Cal.5th 1015, as well as the parties' briefs, including information regarding defendant's "mental condition… ." The court explained the underlying murder was not only "heinous and cruel" but also "premeditated and deliberate." The court was not convinced that defendant's mental health at the time of the murder overrode the concerns for public safety and deterring others from engaging in the same conduct.

Defendant timely appealed.

## DISCUSSION

Defendant claims the trial court erred when the court refused to dismiss or reduce the firearm enhancement. He contends that the trial court should have considered and given "great weight" to the three mitigating circumstances he raised at the resentencing hearing. He also argues that the trial court neither made an express finding that dismissing or reducing the firearm enhancement would endanger public safety or that it considered whether defendant would pose a danger to public safety in the future when he is released as required under *People v. Gonzalez* (2024) 103 Cal.App.5th 215 (*Gonzalez*). We need not address the former contention regarding the mitigating circumstances because we conclude that the trial court correctly found that dismissal or reduction of the firearm enhancement would endanger public safety.

### I

*Legal Principles and Standard of Review*

Pursuant to section 12022.53, subdivision (d), "a person who, in the commission of a felony specified in [certain statutes], personally and intentionally discharges a firearm and proximately causes great bodily injury . . . or death, to a person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life." At sentencing, however, the trial court may strike or

dismiss this mandatory enhancement "in the interest of justice pursuant to [s]ection 1385 . . . ." (§ 12022.53, subd. (h).)  The court may also impose a lesser included, uncharged section 12022.53 enhancement if facts supporting imposition of the lesser enhancement have been alleged and found true.  (See *Tirado*, *supra*, 38 Cal.App.5th at p. 697.)

Section 1385, subdivision (c)(1) provides that "[n]otwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so." Section 1385, subdivision (c)(2) provides that, "[i]n exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.  'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."

"[A]bsent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present.  [Citation.]  In other words, if the court does not find that dismissal would endanger public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*People v. Walker* (2024) 16 Cal.5th 1024, 1029.)  "[I]n most cases, 'if the trial court finds that dismissal of an enhancement would endanger public safety, then it is hard to see how dismissal would further the interests of justice,' notwithstanding the applicability of any mitigating factors identified in subdivision (c)(2)." (*Id*. at p. 1033.)

6

We review for abuse of discretion both a decision not to strike an enhancement and a determination that to do so would endanger public safety. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298 (*Mendoza*).) " ' "[T]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' " (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377.) But " 'an abuse of discretion arises if the trial court based its decision on impermissible factors . . . or on an incorrect legal standard.' " (*Gonzalez*, *supra,* 103 Cal.App.5th at p. 225.)

II

*Analysis*

A. Public safety

Defendant contends the trial court erred in refusing to dismiss or reduce his firearm enhancement because the court failed to make an "actual finding" that dismissal of the enhancement was likely to cause physical injury or other serious danger to others. He also argues the court's finding is not supported by sufficient evidence. As an initial point, the trial court is not required to state reasons for declining to exercise its discretion under section 1385. (*People v. Brugman* (2021) 62 Cal.App.5th 608, 637 (*Brugman*).) In any event, the trial court here did make an express finding on public safety. The court reiterated its concern with defendant's criminal history and failure to succeed on probation, as well as the circumstances of the underlying murder that was committed while defendant was on probation. For these reasons, the trial court found that releasing defendant any earlier than the original sentence of 50 years to life would result in a danger to the public.

7

Sufficient evidence supports the court's finding.  The record demonstrates defendant's increasing criminal violence, notably his convictions for driving under the influence, vandalism, and battery, as well as several violations of probation.  And the crime itself was, as the trial court described, particularly heinous and cruel.  (See *People v. Graham* (2024) 102 Cal.App.5th 787, 798-799 [a court may rely on circumstances of the charged offense to find public danger].)  In addition, defendant's prison records show that he has repeatedly refused to participate in programming as recently as 2022.

Defendant nevertheless argues that a reduction in his sentence would not endanger public safety because—as he reported to Dr. Stembridge—he received mental health care services in prison, attended weekly Alcoholics Anonymous and peer mentorship programs, and completed courses in Criminal Thinking and Behavior.  While this self-reported participation in prison programs may show some success, there is also evidence that defendant repeatedly refused to participate in programming in 2021 and 2022.  Defendant essentially asks this court to reevaluate the evidence in a light most favorable to him and to draw inferences from the evidence contrary to the trial court's ruling.  Given the deferential standard of review, we cannot do so.  (*People v. Myles* (2023) 89 Cal.App.5th 711, 740.)

### A.  Future Dangerousness

Defendant also claims the trial court erred by considering only whether defendant posed a current danger to the public if the firearm enhancement was reduced or stricken, and not whether doing so would endanger public safety at the time of his release as required under *Gonzalez*.  He also claims there is insufficient evidence to support a finding of future dangerousness.  Again, we disagree.

In *Gonzalez*, the trial court considered only whether Gonzalez "presently" posed a danger to society, finding that it did not need to consider whether Gonzalez would pose a danger at a future time when he would be released.  (*Gonzalez, supra,* 103 Cal.App.5th at

pp. 223-224, 231.) The appellate court reversed the trial court's ruling and held that, when determining whether a defendant posed a danger to society under section 1385, subdivision (c), trial courts must also consider whether a defendant would be a danger at the time of the defendant's release. (*Id.* at p. 228.)

Here, the trial court did not look just at whether defendant was presently a danger to society. The court considered defendant's history of mental illness and his childhood trauma. The court considered defendant's refusal to work in prison as well as his more recent refusal to participate in an integrated substance use disorder treatment in prison. The trial court also considered the fact that defendant murdered an unarmed victim, had an escalating history of prior violence, and was on probation at the time he committed the murder. Considering all of these factors, the court concluded defendant had been and would continue to be a danger to the public and should be kept off the streets for as long as possible. (§ 1385, subd. (c)(2).)

Further, while defendant is correct that the trial court did not expressly state "that [his] release in 25 plus years was likely to cause physical injury or other serious danger to others," it makes no difference here. As we previously pointed out, a trial court is not required to state reasons for declining to exercise its discretion under section 1385. (*Brugman, supra,* 62 Cal.App.5th at p. 637.) Moreover, we presume that the trial court considered all relevant factors in the absence of an affirmative record to the contrary. (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.) Based on the various comments by the trial court regarding its concern for public safety, there is no reason to depart from this presumption.

## B. Remaining Claims

Because we conclude the trial court did not abuse its discretion when it found that reducing defendant's sentence would endanger public safety now or, given his offense and his record in prison, if he is ever released in the future, we need not address

9

defendant's remaining claim that the court failed to consider the mitigating circumstances. (See *Mendoza, supra,* 88 Cal.App.5th at p. 297 ["consideration of the mitigating factors in section 1385[, subdivision ](c)(2) is not required if the court finds that dismissal of the enhancement would endanger public safety"].)

Similarly, because we find no sentencing error or need for remand, we need not address defendant's request for remand to a different trial court judge.

### DISPOSITION

The judgment is affirmed.

 

_____

HULL, Acting P. J.

We concur:

_____

RENNER, J.

_____

MESIWALA, J.